UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RICHARD WEBB,                          )     Case No. CV 14-9863-SVW (KK)
                                       )
                    Petitioner,        )     FINAL REPORT AND
                                       )     RECOMMENDATION OF UNITED
        v.                             )     STATES MAGISTRATE JUDGE
                                       )
R.E. BARNES, Warden,                   )
                                       )
                    Respondent.        )
_____)

        This Final Report and Recommendation is submitted to the Honorable Stephen V. Wilson, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## SUMMARY OF RECOMMENDATION

        Richard Webb ("Petitioner"), a California state prisoner proceeding pro se, has filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254 challenging his convictions for attempted first degree murder, shooting at an inhabited dwelling, child abuse, possession of a firearm by a felon, and contempt of court. Petitioner alleges various constitutional violations, including insufficient evidence,

ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and prosecutorial misconduct.  For the reasons that follow, the Petition should be denied in its entirety.

## II.

## PROCEDURAL HISTORY

On January 26, 2012, following a jury trial in the Superior Court of California for the County of Los Angeles, Petitioner was convicted of: (1) one count of first degree murder in violation of Cal. Penal Code § 187(a); (2) one count of shooting at an inhabited dwelling in violation of Cal. Penal Code § 246; (3) two counts of child abuse in violation of Cal. Penal Code § 273a(a); (4) two counts of possession of a firearm by a felon in violation of Cal. Penal Code § 12021(a)(1); and (5) and three counts of contempt of court in violation of Cal. Penal Code § 166(c)(1).  Clerk's Transcript ("CT"), Vol. 2 at 392-405, 432-34; Reporter's Transcript ("RT"), Vol. 3 at 632-37.  The jury also found true allegations that: (1) Petitioner personally used a firearm within the meaning of Cal. Penal Code §12022.5(a) during the commission of the shooting at an inhabited dwelling and child abuse charges; (2) Petitioner personally used a firearm within the meaning of Cal. Penal Code §§ 12022.53(b), (c), and (d) during the commission of the murder; and (3) Petitioner committed the murder and related possession of a firearm by a felon charge for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist in criminal conduct by gang members.  2 CT at 392-94, 396-97, 403-04; 3 RT at 632-37.  In a bifurcated proceeding, Petitioner admitted having suffered a prior felony conviction within the meaning of Cal. Penal Code § 667(a)(1) and § 1170.12(a).  3 RT at 643-44.

On February 28, 2012, the trial court sentenced Petitioner to a prison term of 115 years and four months to life.  2 CT at 426-35; 3 RT at 655-57.

On September 21, 2012, Petitioner filed a direct appeal with the California Court of Appeal.  Lodged Documents ("lodg.") 12-13.  On February 20, 2013, the California Court of Appeal struck a firearm-use enhancement and reduced the criminal conviction

assessment fee, but otherwise affirmed the judgment in an unpublished opinion.  Lodg. 3.

On February 6, 2014, Petitioner constructively filed a habeas corpus petition in the Los Angeles County Superior Court.[1]  Lodg. 4.  On March 13, 2014, the Superior Court denied the petition in a brief, reasoned order.  Lodg. 5.

On June 23, 2014, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal.  Lodg. 6.  On June 25, 2014, the Court of Appeal summarily denied relief.  Lodg. 7.

On July 31, 2014, Petitioner filed a habeas corpus petition in the California Supreme Court.  Lodg. 8.  On November 25, 2014, the California Supreme Court denied the petition without comment.  Lodg. 9.

On December 29, 2014, Petitioner filed the instant Petition in this Court.  ECF Docket No. ("dkt.") 1.  On April 27, 2015, Respondent filed an Answer to the Petition ("Answer").  Dkt. 15.  On June 15, 2015, Petitioner filed a Traverse.  Dkt. 21.  This matter was then submitted for decision.

On July 2, 2015, the Court issued a Report and Recommendation that the Petition be denied.  On September 14, 2015, Petitioner filed Objections to the Report and Recommendation.  Petitioner's objections are addressed in footnote 5.

### III.

### FACTUAL BACKGROUND

**A.  Murder of Dante Page, Sr.**

In January 2006, Petitioner's cousin, Adrian Rollins, reported his gun missing.  2 RT at 284, 288-89.  Rollins's gun was missing from his home where Petitioner had been

---

[1]    Under the prison mailbox rule, the Court considers the petition constructively filed as of the date it was delivered to prison authorities for filing by mail.  See Houston v. Lack, 487 U.S. 266, 276, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988); Lott v. Mueller, 304 F.3d 918, 921 (9th Cir. 2002).  Courts generally presume a petition was delivered to prison authorities on the day the petition was signed or, as in this case, the date the proof of service was signed.  Lewis v. Mitchell, 173 F.Supp.2d 1057, 1058 n.1 (C.D. Cal. 2001).

a guest and had seen Rollins's guns.  2 RT at 292, 462-63.

In February and March 2008, Petitioner was in jail awaiting trial on murder and attempted murder charges; his cellmate was Deshun Bowers.  2 RT at 306.  Petitioner confided in Bowers that his codefendant's father, later identified as Dante Page, Sr., would smirk and laugh at him in court.  2 RT at 308.  At one point, Petitioner stated that his codefendant was going to turn on him.  2 RT at 307.  Petitioner told Bowers, "If I beat this case, I'll go and kill the father."  2 RT at 308.  Petitioner also told Bowers that he "should go give [it to] that cat" and that he "should go get him."  2 RT at 343.  Bowers told police about Petitioner's threats in April 2008.  2 RT at 310; 3 RT at 487.

Long Beach Police Detective Chris Zamora testified at the trial on the 2008 murder charges against Petitioner.  2 RT at 396.  One day in court, Dante Page, Sr, stood up and encouraged his son to testify against Petitioner.  2 RT at 39697. Petitioner was later acquitted of the charges he was facing.  1 RT at 94.

On August 23, 2008, William Hanna was working at a barber shop in Long Beach.  2 RT at 348.  That day, Dante Page, Sr. arrived at the barber shop to have Hanna cut his hair.  2 RT at 352-53.  Page appeared nervous and pointed to Petitioner outside the shop, explaining Petitioner had caused his son to be in jail.  2 RT at 354-56, 367-69, 461-62.  Page asked Hanna to turn his chair toward the inside of the shop so Petitioner would not be able to see him.  2 RT at 356.

A short time later, Petitioner entered the shop and sat down facing Page.  2 RT at 357, 359.  The two talked for about 10 minutes about the earlier court case Petitioner was involved in with Page's son; the two did not argue.  2 RT at 360-62.  After finishing Page's haircut, Hanna went to the back of the shop and, about five to ten minutes later, heard gunshots.  2 RT at 363-64.  When police officers arrived, Hanna went outside and saw Page had been shot.  2 RT at 364-65.  Page died from gunshot wounds to the chest and abdomen.  2 RT at 226.

Surveillance video from a CVS pharmacy near the crime scene showed two individuals running from the location of the shooting to a car owned by Candace

Greenwood, the mother of Petitioner's children.  2 RT at 428-34.  In a phone call Petitioner later placed from jail, he admitted running toward the CVS and driving away in Greenwood's car.  2 RT at 434.

**B.     Shooting at Sabrina H.'s Home**

On November 22, 2009, Petitioner and his girlfriend, Sabrina H., got into an argument.  1 RT at 126.  Petitioner drove Greenwood's car to Sabrina's house with his three-year-old daughter and seven-year-old son in the backseat.  1 RT at 61-62, 90.  Petitioner was loading a gun while driving.  1 RT at 62-63.  Petitioner stopped at Sabrina's house and got out of the car, leaving the gun behind.  1 RT at 64.  After Petitioner was confronted by Sabrina's brothers, Petitioner got back into the car and shot his gun out the window toward Sabrina.  1 RT at 64-67.  The bullet entered Sabrina's apartment through the balcony window.  1 RT at 132-33, 140, 164.  Petitioner then drove with the children to the McDonald's where Greenwood worked.  1 RT at 68.  Sabrina called the police to report the shooting, left a voicemail for Petitioner telling him she was sending the police to Greenwood's job, and called Greenwood to tell her Petitioner had shot up her house and that the police were on the way to Greenwood's job.  1 RT at 95, 133-37.

When Petitioner arrived at the McDonald's, Greenwood met him in the parking lot to take the children.  1 RT at 95.  Greenwood told Petitioner to take "everything else out of the car."  1 RT at 95.  Petitioner took a gun from the center console and placed it in the pocket of his pants.  Id.

Long Beach Police Officer Romero Herrera responded to the McDonald's where Greenwood worked and placed Petitioner under arrest.  1 RT at 171-73.  Petitioner informed Officer Herrera that he had a gun in his pocket.  1 RT at 173.  Long Beach Police Officer Jose Rodriguez retrieved the gun from Petitioner's pocket.  1 RT at 173, 186.

Ballistics testing on the gun recovered from Petitioner's person confirmed the gun was used to kill Dante Page, Sr.  1 RT at 175; 2 RT at 274-76.

**C.      Gang Expert Testimony**

At trial, Detective Chris Zamora testified as the prosecution's gang expert. Detective Zamora testified that he believed Petitioner to be a member of the Santana Blocc Crips.  2 RT at 392-95, 410.  Detective Zamora further testified in response to a hypothetical question that crimes such as the ones alleged to have been committed by Petitioner would have been committed for the benefit of the Santana Blocc Crips.  2 RT at 402-05, 416-18.

**IV.**

**PETITIONER'S CLAIMS FOR RELIEF**

Petitioner's claims, as presented in his Petition, are as follows.

1.      Claim One: Trial counsel rendered ineffective assistance of counsel by failing to call exculpatory witnesses he referred to in his opening statement.

2.      Claim Two: The prosecution did not present sufficient evidence to support the gang enhancement allegations.

3.      Claim Three: The prosecutor committed misconduct by improperly vouching for the credibility of a witness and defense counsel was ineffective for failing to object to the improper vouching.

4.      Claim Four: Ineffective assistance of appellate counsel for failing to present on direct appeal the claims presented in the instant Petition.

Respondent contends that all of these claims fail on the merits.  Answer, at 20-44.[2]

---

[2]      Respondent also argues Claims Two and Three are procedurally barred in light of the Los Angeles County Superior Court's denial of the claims with a citation to In re Dixon, 41 Cal.2d 756 (1953).  Answer at 9-12.  In the interest of judicial economy, this Court will address Petitioner's claim on the merits rather than perform the procedural default analysis.  See Lambrix v. Singletary, 520 U.S. 518, 525, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997) (holding that federal court may address the merits of a habeas petition without reaching procedural issues in the interest of judicial economy).

In addition, Respondent argues all of Petitioner's claims are unexhausted because they were not presented to the California Supreme Court with sufficient particularity.  Answer at 28.  In response, Petitioner filed a Motion for Leave to Exhaust All

1

# V.

2

## STANDARD OF REVIEW

3     A federal court may review a habeas petition by a person in custody under a state-

4     court judgment "only on the ground that he is in custody in violation of the Constitution

5     or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Federal habeas relief is

6     not available for state-law errors.  Swarthout v. Cook, 562 U.S. 216, 131 S. Ct. 859, 861,

7     178 L. Ed. 2d 732 (2011) (per curiam) (citing Estelle v. McGuire, 502 U.S. 62, 67, 112 S.

8     Ct. 475, 116 L. Ed. 2d 385 (1991)).

9     Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

10    federal court may not grant habeas relief on a claim adjudicated on its merits in state

11    court unless the adjudication:

12    (1)    resulted in a decision that was contrary to, or involved an unreasonable

13           application of, clearly established Federal law, as determined by the

14           Supreme Court of the United States; or

15    (2)    resulted in a decision that was based on an unreasonable determination of

16           the facts in light of the evidence presented in the State court proceeding.

17    28 U.S.C. § 2254(d).

18    "Clearly established federal law" means federal law that is clearly defined by the

19    holdings of the Supreme Court at the time of the state-court decision.  See, e.g., Cullen v.

20    Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1399, 179 L. Ed. 2d 557 (2011).  Although

21    only Supreme Court law is binding, "circuit court precedent may be persuasive in

22    determining what law is clearly established and whether a state court applied that law

23    unreasonably."  Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citation omitted).

24    In determining whether a decision is "contrary to" clearly established federal law, a

25    reviewing court must evaluate whether the decision "'applies a rule that contradicts

26    _____

27    Unexhausted Claims. Dkt. 20.  As discussed herein, the Court addresses Petitioner's
      claims on the merits and, thus, DENIES Petitioner's Motion for Leave to Exhaust as

28    MOOT.

[such] law'" and how the decision "confronts [the] set of facts that were before the state court.'" Cullen, 131 S. Ct. at 1399 (quoting Williams v. Taylor, 529 U.S. 362, 405, 408, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). If the state decision "'identifies the correct governing legal principle' in existence at the time," a reviewing court must assess whether the decision "'unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413). An "unreasonable application" of law is "'different from an incorrect application'" of that law. Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011) (quoting Williams, 529 U.S. at 410) (emphases omitted). Similarly, a state-court decision based upon a factual determination may not be overturned on habeas review unless the factual determination is "'objectively unreasonable in light of the evidence presented in the state-court proceeding.'" Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

The AEDPA standard requires a high level of deference to state-court decisions, such that a state court's decision will be upheld if "fairminded jurists could disagree as to whether it was correct." Gulbrandson v. Ryan, 738 F.3d 976, 990 (9th Cir. 2013) (citation and internal quotation marks omitted). Even if this Court finds such a state-court error of clear constitutional magnitude, habeas relief is not available unless the error "had substantial and injurious effect or influence in determining the jury's verdict." Fry v. Pliler, 551 U.S. 112, 116, 121–22, 127 S. Ct. 2321, 168 L. Ed. 2d 16 (2007) (citations and internal quotation marks omitted).

Where, as here, the state courts supply no reasoned decision on the claims presented for review, this Court must perform an "'independent review of the record' to ascertain whether the state court decision was objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003) (citing Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000)).[3]

_____

[3] On habeas review, the Los Angeles County Superior court offered a vague denial of the merits of Petitioner's claims, stating only that he failed to present a prima facie case for relief. Because the superior court did not provide any reasoning for its

# VI.

## DISCUSSION

**A.    Petitioner Fails to Demonstrate Ineffective Assistance of Trial Counsel in Claims One and Three**

### 1.    Background

In Claim One, Petitioner argues his trial counsel was ineffective for failing to call two witnesses on Petitioner's behalf after he discussed the witnesses in his opening statement.  Petition at 5; Petition, Attachment A ("Attach. A") at 1-2; Petition, Memorandum of Points and Authorities ("MPA") at 1-3.  In Claim One and portions of Claim Three, Petitioner argues counsel was ineffective for failing to object to the prosecutor's alleged improper vouching for the credibility of prosecution witness Deshun Bowers.  Attach. A at 1; MPA at 3, 6.

### 2.    Legal Standard

For Petitioner to prevail on his ineffective assistance of counsel claim, he must satisfy a two-prong test:  (1) counsel's performance was deficient, and (2) prejudiced resulted from the deficient performance.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  A court evaluating an ineffective assistance of counsel claim does not need to address both components of the test if a petitioner cannot sufficiently prove one of them.  Id. at 697; see also Thomas v. Borg, 159 F.3d 1147, 1152 (9th Cir. 1998).

To prove deficient performance, a petitioner must show counsel's representation fell below an objective standard of reasonableness.  Strickland. 466 U.S. at 687-88. However, establishing counsel's deficient performance does not warrant setting aside the judgment if the error had no effect on the judgment.  Strickland, 466 U.S. at 691; see also Seidel v. Merkle, 146 F.3d 750, 757 (9th Cir. 1998).  Thus, a petitioner must also show prejudice, such that there is a reasonable probability that, but for counsel's unprofessional

conclusion, this Court has conducted an independent review of the record.

errors, the result of the proceeding would have been different.  <u>Strickland</u>, 466 U.S. at 694.

Moreover, a habeas court's review of a claim under the <u>Strickland</u> standard is "doubly deferential." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).   The relevant question "is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." <u>Id.</u> (citations omitted).

### 3.    Failure to Call Witnesses

In Claim One, Petitioner faults counsel for failing to call two witnesses, Mr. and Mrs. Herrera, in Petitioner's defense after referring to the witnesses in his opening statement.

### a.    Additional Factual Background

During opening statements, Petitioner's counsel told the jurors that Mr. and Mrs. Herrera would testify during the trial and would contradict the prosecution's evidence regarding the identity of the person who shot Mr. Page, Sr.  Petitioner's counsel explained:

> And not one of [the witnesses] is going to tell you that Mr. Webb was the shooter or the person that shot Mr. Page, Sr. and, in fact, you will hear from at least two witnesses who will describe the shooter because they were actually driving by just as the shots rang out.

> See, this barber shop sits on a block of Atlantic and 60th, near 60th and on the corner of 60th is a CVS pharmacy drugstore with a parking lot between the CVS and the barber shop.

> And, apparently, it is very busy there.  People were coming in and out of that parking lot and two individuals, a couple Mr. and Mrs. Herrera were just leaving the CVS pharmacy and they were driving by the front of the barber shop when they heard the shots and immediately turned to see what was

1    happening.

2         And they described what the shooter looked like and what the shooter

3    was wearing.  They actually describe it to the police that day.  They describe

4    it to detectives after that particular day.  Again, both consistent with that

5    description.  They had a description of the shooter.  Once again does not

6    describe Mr. Webb.

7         And [on the surveillance video] you will see someone in white, wearing

8    white, and it purports to be Mr. Webb at some point getting into that vehicle

9    and driving away.  Driving away wearing white.

10        Mr. Herrera and Mrs. Herrera describe the shooter as wearing all dark

11   clothing.  Again, this is evidence you will hear from the stand describing the

12   shooter from people that were actually there witnessing the shooting.

13   1 RT at 56-58.

14        Neither the prosecution nor defense called Mr. or Mrs. Herrera as witnesses during

15   trial.  In closing argument, the prosecutor commented on the defense's failure to call

16   these witnesses, as follows:

17        Okay.  A couple other things that [defense counsel] talked about, he said,

18   "Well, you didn't hear from any of the witnesses at the scene."  Well, actually,

19   he promised to call a couple people he said were witness[es] in his opening

20   statement.  That is, again, not something you consider that those were people

21   you didn't hear from.

22        And if he had a way to bring those witnesses to give you something that

23   would be useful, you would have heard from them.

24        So you can conclude that they had nothing that would be useful to give

25   you in this trial.

26   3 RT at 615.

27        **b.    Analysis**

28   Here, Petitioner claims trial counsel acted unreasonably in referencing the

11

Herreras' testimony during opening statements and then subsequently failing to call the Herreras to testify.  However, in order for a petitioner to establish prejudice from trial counsel's failure to call a witness, a petitioner must show that the witness was likely to have been available to testify, that the witness would have given the proffered testimony, and that the witness's testimony created a reasonable probability that the jury would have reached a verdict more favorable to the petitioner.  See Alcala v. Woodford, 334 F.3d 862, 872-73 (9th Cir. 2003); Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (rejecting claim of ineffective assistance for failure to call witness based upon lack of affidavit from witness regarding substance of testimony).

Here, it unclear whether the Herreras were willing and able to testify, and whether they would have testified as trial counsel claimed during opening statements.  Notably, Petitioner has not provided an affidavit or other evidence establishing the Herreras were willing and able to testify as proffered.  See Dows, 211 F.3d at 486.  In addition, counsel's reference to the Herreras during opening statements does not, by itself, establish prejudice.  Cf. United States ex rel. Hampton v. Leibach, 347 F.3d 219, 260 (9th Cir. 2003) (concluding trial counsel's failure to call defendant to testify after promising to do so in opening statement "was not so prejudicial that it would support relief in and of itself," but finding prejudice in light of other failures by counsel).  The jury was instructed that statements of counsel were not evidence and that neither side had to call all potential witnesses, 1 RT at 34, 498, 503, and it is presumed the jury followed the court's instructions.  Weeks v. Angelone, 528 U.S. 225, 234, 120 S. Ct. 727, 145 L. Ed. 2d 727 (2000).

Moreover, even assuming the Herreras would have testified as proffered, their testimony that they believed the shooter wore dark clothing (whereas the video surveillance depicted someone purporting to be Petitioner wearing all white), is insufficient to establish prejudice.  There was substantial evidence establishing Petitioner as the murderer of Page.  Among other things, Petitioner told his cellmate he would kill Page for encouraging his son to testify against Petitioner if he was acquitted on an earlier

murder charge.  2 RT at 307-08, 343.  On the day of the murder, just moments before the murder, Petitioner entered the barber shop and spoke with Page about the prior murder case.  2 RT at 357, 359.  Page appeared very nervous about Petitioner's presence.  2 RT at 354-56.  Minutes after Page left the barber shop, he was shot and killed.  2 RT at 226, 364.  Petitioner was caught on a surveillance video running from the barber shop to Greenwood's car.  2 RT at 428-34.  Months later, when Petitioner was arrested for shooting at Sabrina H.'s home, police recovered the murder weapon in Petitioner's pocket.  1 RT at 173, 186; 2 RT at 274-76.  The gun had been legally owned by Petitioner's cousin, but some years before the crimes it went missing from a home where Petitioner spent time.  2 RT at 287-89.  In light of this substantial evidence, there was no "reasonable probability" the outcome of the trial would have been different if trial counsel had called the Herreras as witnesses or alternatively had not referred to them in his opening statement.  Strickland, 466 U.S. at 694.

### 4.  Vouching

In Claims One and Three, Petitioner argues counsel was ineffective for failing to object when the prosecutor improperly vouched for the credibility of Deshun Bowers.  As discussed in Section C, below, this Court finds that the prosecutor did not improperly vouch for Bower's credibility.  Thus, any objection by Petitioner's trial counsel would have lacked merit.  Counsel's failure to lodge such a meritless objection does not support a finding of ineffective assistance.  Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance."); James v. Borg, 24 F.3d 20, 26-27 (9th Cir. 1994) (counsel's failure to make what would be a futile motion does not qualify as ineffective assistance of counsel).

Accordingly, under the "doubly deferential" standard of review, the Court does not find the state court's determination under the Strickland standard to be unreasonable.  Thus, habeas relief is not warranted on Claim One.

**B.  Petitioner Fails to Demonstrate Insufficient Evidence in Claim Two**

**1.  Background**

13

1   In Claim Two, Petitioner argues the evidence was insufficient to support the gang

2   allegations.  Petition at 5; Attach. A at 2; MPA at 3-5.  Specifically, Petitioner argues the

3   prosecution presented evidence to support only the "for the benefit" provision of the gang

4   allegations and "no evidence was presented that the petitioner was directed by, or acted in

5   association with any persons of a street gang."[4]  MPA at 4-5.  Petitioner further argues

6   that the gang expert's testimony "alone, unsupported by any real evidence is insufficient,

7   to have led a rational trier of fact to find guilt beyond a reasonable doubt."  MPA at 4.

8   **2.   Legal Standard**

9   The standard on habeas review for assessing challenges to the sufficiency of

10   evidence supporting a sentencing enhancement is the same as that for weighing the

11   sufficiency of evidence underlying a criminal conviction under Jackson v. Virginia, 443

12   U.S. 307, 321, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  See Garcia v. Carey, 395 F.3d

13   1099, 1102 (9th Cir. 2005).  Under Jackson, a petitioner may challenge the sufficiency of

14   the evidence underlying a conviction in state court, on the grounds that the conviction

15   violates his rights under the Due Process Clause of the Fourteenth Amendment to the

16   U.S. Constitution.  Jackson, 443 U.S. at 321.  This Court's inquiry into the sufficiency of

17   evidence under Jackson is limited.  Evidence is sufficient unless the charge was "so

18   totally devoid of evidentiary support as to render [petitioner's] conviction

19   unconstitutional under the Due Process Clause of the Fourteenth Amendment."  Fish v.

20   Cardwell, 523 F.2d 976, 978 (9th Cir. 1975) (internal quotation marks and citations

---

21   [4]   In his Objections, Petitioner presents an additional argument that the evidence
22   presented at trial was insufficient to prove the "criminal street gang" and "primary
23   activities" element of California's gang enhancement.  Objections, at 6-6a.  A district
     court has discretion, but is not required, to consider evidence or claims presented for the
24   first time in objections to a report and recommendation.  See Brown v. Roe, 279 F.3d
25   742, 744-45 (9th Cir. 2002).  Although Petitioner is pro se, he nevertheless had the
     opportunity to include these allegations at an earlier time, but failed to do so.  Moreover,
26   Petitioner's claims that the evidence was insufficient to prove the "criminal street gang"
27   and "primary activities" elements of California's gang statute do not raise a novel claim
     in an unsettled area of law.  See Sossa v. Diaz, 729 F.3d 1225, 1231 (9th Cir. 2013).
28   Accordingly, the Court declines to consider Petitioner's belatedly-asserted allegations.

14

omitted).  The standard of review on a sufficiency of the evidence claim has long been whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson, 443 U.S. at 319 (1979); see Gonzalez v. Knowles, 515 F.3d 1006, 1011 (9th Cir. 2008).  This Court will not re-weigh the evidence to reach a result different from that of the jury.  See Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995) ("The reviewing court must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict.").  Circumstantial evidence alone is sufficient to support a conviction.  See Jackson, 443 U.S. at 324-25 ("From the circumstantial evidence in the record, it is clear that the trial judge could reasonably have found beyond a reasonable doubt that the petitioner did possess the necessary intent at or before the time of the killing."); Schad v. Ryan, 671 F.3d 708, 717 (9th Cir. 2011) ("Circumstantial evidence and reasonable inferences drawn from it may properly form the basis of a conviction.").

On federal habeas review under AEDPA, the Court must apply the standards of Jackson with an "additional layer of deference" to the state court's decision and may only overturn the decision if it constituted an "objectively unreasonable application" of Jackson.  See Juan H. v. Allen, 408 F.3d 1262, 1274 & n.12 (9th Cir. 2005).  In short, for a federal habeas court, "the only question under *Jackson* is whether th[e] [jury] finding was so insupportable as to fall below the threshold of bare rationality."  Coleman v. Johnson, ___ U.S. ___, 132 S. Ct. 2060, 2065, 182 L. Ed. 2d 978 (2012).

The Jackson standard is "applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  Jackson, 443 U.S. at 324 n.16. The Court, therefore, first looks to California law when assessing whether the Court of Appeal unreasonably applied Jackson in deciding that there was sufficient evidence supporting Petitioner's gang enhancement.

**3.    Analysis**

15

1        Subdivision (b) of California Penal Code section 186.22 provides for a sentencing

2    enhancement when the defendant is "convicted of a felony committed for the benefit of,

3    at the direction of, or in association with any criminal street gang, with the specific intent

4    to promote, further, or assist in any criminal conduct by gang members . . ."  Cal. Penal

5    Code § 186.22(b)(1).  Here, Petitioner only challenges the sufficiency of the evidence to

6    prove the "for the benefit of, at the direction of, or in association with" element.  MPA at

7    4-5.

8        First, Petitioner argues the prosecution failed to prove each and every element of

9    the allegation, claiming it was required to prove that the crimes were committed for the

10   benefit of, at the direct of, *and* in association with a criminal street gang.  MPA at 4-5.

11   Petitioner misreads the statute.  Under Section 186.22(b)(1), the prosecution must prove

12   just one of these enumerated elements to support the gang enhancement.  People v.

13   Morales, 112 Cal. App.4th 1176, 1198 (2003) (emphasizing that the gang statute

14   "requires that the crime be committed (1) for the benefit of, (2) at the direction of, *or* (3)

15   in association with a gang.")  (emphasis in original) (second emphasis omitted); cf. Cruz

16   v. Harrington, No. CV 10-10018-VBF (MLG), 2011 WL 1833326, at *9 (C.D. Cal.

17   March 15, 2011) (rejecting claim regarding the admission of expert testimony as

18   harmless, stating "because the prosecution proved the first element of the gang

19   enhancement allegations by showing the crimes were committed 'in association with'

20   MS13, it was not necessary to also prove that the charged crimes were committed 'for the

21   benefit of' the gang.").

22       Moreover, the evidence presented at trial was sufficient to prove Petitioner

23   committed the crimes for the benefit of his gang.  First, the prosecution's gang expert

24   testified Petitioner was a member of the Santana Blocc Crips.  2 RT at 392-95, 410.

25   Second, the prosecution's gang expert testified at length that crimes such as those

26   committed here would benefit Petitioner's gang by intimidating other gang members and

27   other residents from testifying against members of Petitioner's gang, and by instilling

28   fear into the community so that the gang can operate unhindered.  2 RT at 403-05, 416-

18.  This testimony was sufficient to prove the "for the benefit of" element of the gang enhancement.  People v. Xue Vang, 52 Cal.4th 1038, 1044-52 (2011) ("Expert opinion that particular criminal conduct benefitted a gang is not only permissible but can be sufficient to support the Penal Code section 186.22(b)(1) gang enhancement.").

Hence, after viewing the evidence presented at trial in the light most favorable to the prosecution and presuming that the jury resolved all conflicting inferences from the evidence against Petitioner, the Court finds that a rational juror "could reasonably have found beyond a reasonable doubt" that Petitioner violated Penal Code section 186.22(b)(1).  Jackson, 443 U.S. at 325-26.  Thus, habeas relief is not warranted on Claim Two.

**C.  Petitioner Fails to Demonstrate Prosecutorial Misconduct in Claim Three**

**1.  Background**

In Claim Three, Petitioner argues the prosecutor committed misconduct by vouching for the credibility of witness Deshun Bowers.  Petition at 5-6; Attach. A at 2-3; MPA at 5-6.  Petitioner cites to the following portion of the prosecutor's direct examination of Bowers:

Q   Now, when the detective and I came and talked to you about this, did I explain to you that I can't make you any promises or reduce your sentence?

A   Yes.

Q   And you asked is there a possibility that the parole board or the judge might be able to do something for me some time down the line, right?

A   Yeah.

Q   And I told you I really didn't know?

A   Yes.

Q   Is that right?

A   Yes.

Q   And I told you I have seen this judge go to bat for somebody who has testified truthfully.  But I just have no idea whether she has the power to do that.

1    I can't make you any kind of promises along those lines; is that all,

2    correct?

3        A   Yes; that is what you said.

4        Q   So you really have no idea whether you would get any kind of

5    benefit for testifying against the defendant here in this trial?

6        A   Yeah, at this point I don't care.  He threatened my life and, you

7    know, it is what it is.  So I'm here because I'm here.

8    2 RT at 315-16.

9        Petitioner also cites to the following portion of the prosecutor's cross-examination of

10   Long Beach Police Detective David Rios:

11       Q    And [Bowers] told you about that threat during the course of your

12   conversation; is that right?

13       A    That is correct.

14       Q    And did he tell you about that on tape?

15       A    Yes, sir.

16       Q    And the date of that interview was that April 7, 2008?

17       A    Correct, sir.

18       . . .

19       Q    What he indicated to you specifically was [] that he would do

20   anything to get out and come home even if that meant ratting out his cellmate,

21   right?

22       A    That is correct.

23       Q    Not if it meant lying about his cellmate?

24       A    Not lying no, sir.

25   3 RT at 490, 492.

26       Petitioner also cites the following portions of the prosecutor's closing argument:

27       Saying [Deshun Bowers] was trying to get benefits on this case or

28   whatever.  The fact of the matter is that he could not have made this up for

18

1    benefits.

2          This isn't even what they were talking to him about.  They were talking

3    to him about the other case and it came up.

4    . . .

5          You got the threat to kill the victim.  That was made to Deshun Bowers.

6    Something that could not have been made up.  It was documented on tape

7    months before you got the 911 calls from Sabrina and h[er] mom.

8    3 RT at 611, 616.

9    ## 2.    Legal Standard

10   A habeas petition alleging prosecutorial misconduct will be granted only when the

11   misconduct did "so infect the trial with unfairness as to make the resulting conviction a

12   denial of due process."  Greer v. Miller, 483 U.S. 756, 765, 107 S. Ct. 3102, 97 L. Ed. 2d

13   618 (1987) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L.

14   Ed. 2d 431 (1974)); see also Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464,

15   91 L. Ed. 2d 144 (1986).  "[T]he touchstone of due process analysis in cases of alleged

16   prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."

17   Smith v. Phillips, 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982).

18   A prosecutor may not vouch for the credibility of a witness.  "Vouching consists of

19   placing the prestige of the government behind a witness through personal assurances of

20   the witness's veracity, or suggesting that information not presented to the jury supports

21   the witness's testimony."  United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.

22   1993); see also Lawn v. United States, 355 U.S. 339, 359 n.15, 78 S. Ct. 311, 2 L. Ed. 2d

23   321 (1958); Berger v. United States, 295 U.S. 78, 86-88, 55 S. Ct. 629, 79 L. Ed. 1314

24   (1935).  Such misconduct poses two dangers:  it may lead the jury to convict on the basis

25   of evidence not presented, and it carries with it the imprimatur of the government.  United

26   States v. Young, 470 U.S. 1, 18-19, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985).  To warrant

27   habeas relief, prosecutorial vouching must so infect the trial with unfairness as to make

28   the resulting conviction a denial of due process.  Davis v. Woodford, 384 F.3d 628, 644

19

(9th Cir. 2004) (citing Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (prosecutorial misconduct violates due process when it renders a trial "fundamentally unfair")).

### 3. Analysis

Petitioner has not shown that the prosecutor engaged in improper vouching. In none of the quotations above did the prosecutor use the prestige of the government, or suggest he was privy to information withheld from the jury that supported or discredited the witness's testimony. Rather, the prosecutor attempted to persuade the jury that Bowers was telling the truth. To the extent the prosecutor raised the issue of the judge's ability to obtain benefits for Bowers, the prosecutor merely presented the fact that Bowers was not testifying in exchange for some promised benefit. In addition, Bowers made clear that he was not promised a benefit, was not expecting a benefit, and was testifying not because he might receive a benefit, but because Petitioner had threatened his life. Ultimately, the prosecutor's arguments were permissible comments based on the state of the evidence presented at trial. See Duckett v. Godinez, 67 F.3d 734, 742 (9th Cir. 1995) (permissible for prosecutor to argue credibility of witness based on the evidence presented at trial).

Accordingly, the state courts' rejection of Petitioner's prosecutorial misconduct claim was neither contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on Claim Three.

### D. Petitioner Fails to Demonstrate Ineffective Assistance of Appellate Counsel in Claim Four

### 1. Background

In Claim Four, Petitioner argues his appellate counsel was ineffective for failing to raise on direct appeal to the state courts the claims Petitioner raises in the instant Petition. Petition at 6; Attach. A at 4; MPA at 6-7.

### 2. Legal Standard

The <u>Strickland</u> standard also applies to claims of ineffective assistance of appellate counsel based on the failure of counsel to raise particular claims on appeal. <u>Smith v. Robbins</u>, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000).  A habeas petitioner must show that, but for appellate counsel's failure to raise the omitted claim(s), there is a reasonable probability that the petitioner would have prevailed on appeal.  In the absence of such a showing, neither <u>Strickland</u> prong is satisfied.  <u>See</u> <u>Pollard v. White</u>, 119 F.3d 1430, 1435-37 (9th Cir. 1997); <u>Miller v. Keeney</u>, 882 F.2d 1428, 1434-35 (9th Cir. 1989).

Appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. <u>Jones v. Barnes</u>, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983).  Counsel "must be allowed to decide what issues are to be pressed." <u>Id.</u>  The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy, and counsel is not deficient for failing to raise a weak issue. <u>Miller</u>, 882 F.2d at 1434.  There is, of course, no obligation to raise meritless arguments on a client's behalf.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice).

### 3.   Analysis

As explained herein, each of Petitioner's claims lack merit.  Thus, the claims would not have resulted in a more favorable result on appeal and do not support Petitioner's claim of ineffective assistance of appellate counsel. <u>Jones v. Ryan</u>, 691 F.3d 1093, 1101 (9th Cir. 2012) (failure of appellate counsel to raise meritless argument cannot be prejudicial); <u>Wildman v. Johnson</u>, 261 F.3d 832, 840 (9th Cir. 2001) (holding that "appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal").

Accordingly, the state courts' denial of Petitioner's ineffective assistance of appellate counsel claim was not contrary to, or an unreasonable application of, federal

law.  Thus, habeas relief is not warranted on Claim Four.

## VII.

## **RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that the District Court issue an Order: (1) accepting this Final Report and Recommendation; (2) denying the Petition; (3) denying Petitioner's Motion for Leave to Exhaust as moot (dkt. 20); and (4) dismissing this action with prejudice.

DATED: September 23, 2015     _____

HON. KENLY KIYA KATO
United States Magistrate Judge